In the

# United States Court of Appeals

## For the Seventh Circuit

No. 25-1986

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

ANDREW BOLTZ,

*Defendant-Appellant.*

Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 1:20-cr-00734-1 — **John Robert Blakey**, *Judge.*

ARGUED MAY 12, 2026 — DECIDED JULY 20, 2026

Before BRENNAN, *Chief Judge*, and KIRSCH and LEE, *Circuit Judges*.

BRENNAN, *Chief Judge*. A jury convicted Andrew Boltz of sexually exploiting a minor, 16-year-old A.S. At Boltz's trial, the district court made several evidentiary rulings. First, the court prohibited him from asking about whether A.S. had sent nude photographs to other men because the questions violated the federal rape shield, Federal Rule of Evidence 412. Second, it admitted evidence under Federal Rule of Evidence

404(b) that Boltz had groomed and exchanged sexually explicit photographs with another minor. Third, the court allowed A.S.'s mother to testify about A.S.'s personality. After trial, the district court found that the government did not turn a blind eye to evidence destruction, so the court denied Boltz a new trial.

Boltz asks this court to reverse these rulings.

## I. Background

### A. Charged Conduct

In January 2020 Andrew Boltz met A.S.[1] on Omegle, a website that connects strangers by video chat. He was around 25 years old, and she was 16. They chatted for a few hours and then moved the conversation to texting, phone and video calls, and Snapchat.[2] Nearly every day after, they spoke constantly unless A.S. was in school. They discussed the mundane—how her day had been or what she had cooked—and at times the emotional—her struggles with anxiety, depression, and co-dependency.

---

[1] The victim in this case was 16 years old when the events occurred. She is now older than 18. "[T]here is a strong presumption in favor of requiring adult parties to litigate under their real names in federal court," *Doe v. Univ. of S. Ind.*, 172 F.4th 511, 514 (7th Cir. 2026). That rule applies to "parties," not victims. So, we see no reason to use A.S.'s real name. Indeed, "[c]ourts often extend the protection of anonymity to victims of sex crimes." *Doe v. Loyola Univ. Chi.*, 100 F.4th 910, 914 (7th Cir. 2024). She was a minor when the events occurred, and they are sexually explicit, so using her initials here protects her from future embarrassment and harassment.

[2] Snapchat is a social media application and messaging service for cell phones, which allows users to communicate through photos and messages.

Other times, however, Boltz asked for sexually explicit photos and videos. He knew she was only 16, telling her that he "could go to jail for being with you very easily." Over Snapchat he would say, "I want a vid"; "Do something special for me will ya"; and "I'm ok with just a teasing pic." A.S. felt like "he was asking for a photo of me at least halfway naked … And I was explaining that I didn't want to do it." At one point, he said, "Hey if I asked for a pic, would you send one?" A.S. then sent five nude photographs. On multiple occasions he requested videos of her performing certain sex acts.

Boltz also "groomed" A.S., gaining her trust and making her feel more comfortable so that she would send more explicit material. Boltz learned A.S. had a "weakness" for kids and pets. He sent her a picture of his kids for the background of her phone and said she could claim his daughter as her own. And he added, "I got three dogs and two cats lol." Boltz told her he was "gonna give [her] all the attention [she] can handle" and assured A.S. that he could fix her mental health afflictions. He repeatedly assured A.S. he loved her and would treat her like a "princess." And even after she confirmed that she was 16, he invited her to spend the weekend.

After about two weeks, they had exchanged more than 8,500 Snapchat messages, texts, and phone calls. Law enforcement was alerted, and Boltz was apprehended.

**B. Trial**

The government charged Boltz with four counts of sexual exploitation of a minor. 18 U.S.C. § 2251(a).[3] At a six-day jury trial, the government introduced substantial evidence of his guilt.

First, prosecutors offered into evidence preserved Snapchat logs of their conversations. The logs showed Boltz repeatedly requesting sexually explicit photos and videos, and A.S. telling him she was a minor. There was one wrinkle, however. A.S. testified that after her mother caught her, she had deleted her Snapchat account. Deleting the account, she explained, erased some messages. What is more, Boltz had also asked her to delete Snapchat messages. So, for certain exchanges, the jury saw just Boltz's messages to A.S.

The government also called A.S.'s mother to testify. She explained to the jury that A.S. was susceptible to older men online, as A.S. had few friends and was socially awkward. A.S.'s mother said she learned of the relationship through the school guidance counselor.

Also relevant is a strategic choice made by Boltz's defense counsel. The mother of Boltz's children, Stephine Payne, identified the genitals in photos Boltz sent to A.S. as his. But on cross-examination, Boltz's counsel asked whether the photo could depict someone else, and she conceded the photos might be of his brother or father. In response, the government introduced a set of video clips from an 11-minute interview of Boltz by officers of the Norwalk, Ohio, Police Department. In

---

[3] He was also charged with and convicted of one count of receipt of child pornography, 18 U.S.C. § 2252A(a)(2)(A) and (b)(1). He does not appeal this conviction.

the snippets, Boltz admitted to grooming another minor, "M.C."[4]

Boltz, for his part, tried to elicit testimony about other sexually explicit pictures A.S. had sent to other men. On cross-examination of the government's investigator who extracted the data from A.S.'s phone, Boltz's counsel asked, "How many pictures were sent from the phone that you collected to phones that were not possessed by Andrew Boltz?" The government objected, and Boltz's counsel conceded he was seeking an admission that A.S. sent several sexually explicit photos and messages to other men. The district court prohibited Boltz from eliciting the testimony under Federal Rule of Evidence 412.

A jury returned guilty verdicts on all counts. Boltz moved for a new trial under Federal Rule of Criminal Procedure 33. He lodged a number of objections to the district court's decisions, all of which it rejected.

First, Boltz argued the sexually explicit messages and photos A.S. sent to other men should have been admitted. But the district court concluded that the federal rape shield law in Rule 412 barred such evidence, and none of the Rule's exceptions applied.

Second, Boltz submitted that the interview clips of him admitting to grooming M.C. should have been excluded as propensity evidence—that because he engaged in those acts, he was more likely to commit these crimes. But the district court reasoned that there was a propensity-free inference to admit

---

[4] The record and briefs reference another victim, "Minor C," whom we refer to as "M.C."

the evidence: Boltz's prior conduct with M.C. established him as the one messaging A.S. So, the evidence fell within that permitted use under Federal Rule of Evidence 404(b)(2).

Third, Boltz claimed that A.S.'s mother should not have been permitted to testify. But her testimony was probative to the inducement or enticement element of the crime with which Boltz was charged, and thus admissible, the court ruled. Fourth, Boltz argued that the government failed to preserve exculpatory messages, but the district court ruled that Boltz had not shown the government acted with the required bad faith. Boltz appeals each decision.

## II. Analysis

### A. Rule 412–Sex Offense Cases: The Victim's Sexual Behavior or Predisposition

At common law, a rape victim's prior sexual conduct was freely admitted as relevant to her character. 23 CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 5372 (2d ed. April 2026 update). A history of unchastity meant the victim was more likely to make false rape accusations, and in reality, had consented. "[W]ill you not more readily infer assent in the practised Messalina, in loose attire, than in the reserved and virtuous Lucretia?" *People v. Abbot*, 19 Wend. 192, 195 (N.Y. Sup. Ct. 1838). Faced with the threat of their sexual past being publicized, victims were reluctant to come forward.

So came "the first major change to the Federal Rules of Evidence." WRIGHT & MILLER, *supra* § 5372. Known as a "rape shield," Federal Rule of Evidence 412 protects victims against potential embarrassment and the sexual stereotyping that comes with the public disclosure of their sexual past. *United*

*States v. Young*, 955 F.3d 608, 614 (7th Cir. 2020). A shift in so-
cietal attitudes also motivated the change: "it is no more likely
that a sexually active woman would carry out such a scurril-
ous act of false rape accusation than that a woman less sex-
ually experienced would do so." Sherry F. Colb, *"Whodunit"*
*Versus "What Was Done": When to Admit Character Evidence in*
*Criminal Cases*, 79 N.C. L. REV. 939, 975 (2001).

Under Rule 412, two types of evidence are not admissible:
(1) any evidence offered to prove that a victim "engaged in
other sexual behavior"; and (2) any evidence offered to prove
a victim's "sexual predisposition." FED. R. EVID. 412(a)(1) &
(2).

Here, Boltz sought to admit evidence that A.S. sent sex-
ually explicit photos and videos to other individuals. The dis-
trict court excluded that evidence under Rule 412. We review
that decision for abuse of discretion. *United States v. Carson*,
870 F.3d 584, 593 (7th Cir. 2017).

The district court is correct. Rule 412(a)(2) speaks of "evi-
dence offered to prove a victim's sexual predisposition." The
phrase "sexual predisposition," the advisory committee's
note explains, refers to evidence that "may have a sexual con-
notation." FED. R. EVID. 412 advisory committee's note to 1994
amendments. Sexually explicit photos and videos depicting
sexual acts have a "sexual connotation."

That conclusion is consistent with the Tenth Circuit's hold-
ing in *United States v. Baker*, 157 F.4th 1215 (10th Cir. 2025).
There, the court answered whether a minor victim's YouTube
videos, which detailed sexual fantasies and storytelling, fell
under Rule 412. *Id.* at 1221–25. They did, as "the videos reveal
D.P.'s inclination or propensity over a period of time to en-

gage in sexual fantasy through storytelling." *Id.* at 1222. "[M]ost assuredly" the videos constituted evidence of a predisposition of sexual behavior. *Id.* at 1223.

Further, for evidence to fall within Rule 412(a)(2), it must be "offered to prove" the victim's sexual predisposition. Boltz offered the evidence for precisely that reason—because A.S. voluntarily sent sexually explicit material to other men, she freely sent him photos and videos without his enticement.

In addition to "sexual predisposition," the evidence that A.S. sent photos and videos of a sexual nature could also fall under Rule 412(a)(1) as "sexual behavior." That definition includes "sexual contact" and "activities of the mind, such as fantasies of dreams." FED. R. EVID. 412 advisory committee's note to 1994 amendments. Here, the photos and videos— meant to simulate sexual intercourse—easily could be evidence of "sexual behavior." Sexually explicit chat logs fall under this definition, *United States v. Ogden*, 685 F.3d 600, 604– 05 (6th Cir. 2012), so the Snapchat photos and videos here would as well. In any event, whether "sexual predisposition" or "sexual behavior," the evidence falls under one or the other, if not both.

Our conclusion that the district court properly excluded the sexually explicit photos and videos under Rule 412 aligns with that Rule's twin purposes: "shielding the alleged victim from potential embarrassment and safeguarding the victim against stereotypical thinking." FED. R. EVID. 412 advisory committee's note to 1994 amendments; *see also Sun v. Xu*, 99 F.4th 1007, 1017 (7th Cir. 2024). Videos and photos of this sort are deeply embarrassing, and they portray A.S. as a highly sexualized minor female seeking an older male's attention.

Rule 412(a) bars this evidence, so to be admissible it must fall within one of the exceptions to Rule 412(b). One exception applies in criminal cases if excluding the evidence would "violate defendant's constitutional rights." *Id.* (b)(1)(C). The district court's exclusion, Boltz contends, infringed on his constitutional right to present a complete defense. *See Chambers v. Mississippi*, 410 U.S. 284, 302 (1973).

Out of the gate, Boltz's argument fails because he did not adhere to Rule 412's procedural requirements. A party who intends to offer evidence under a Rule 412 exception must: (A) "file a motion that specifically describes the evidence and states the purpose for which it is to be offered"; (B) do so at least 14 days before trial; (C) "serve the motion on all parties"; and (D) notify the victim. FED. R. EVID. 412(c)(1)(A)–(D). Boltz did not comply with these prerequisites, despite the district court's admonition before trial that any Rule 412 evidence requires sufficient notice. At a pretrial conference, the court warned, "If there is anything that arguably could be within 412, you better bring it up to me outside the presence of the jury." But then at trial, during cross-examination, Boltz's counsel asked a government investigator how many sexually explicit pictures or videos were sent from A.S.'s phone to people other than Boltz. A prophylactic rule like Rule 412 "protect[s] against surprise to the prosecution." *Stephens v. Miller*, 13 F.3d 998, 1002 (7th Cir. 1994) (en banc). So, the evidence was correctly excluded as a matter of procedural fairness. *See United States v. Boyles*, 57 F.3d 535, 548 (7th Cir. 1995).

Even ignoring Boltz's neglect, the evidence does not fall within this exception. A defendant who claims his right to present a complete defense has been violated must show that the evidence is "central" to his "claim of innocence." *Crane v.*

*Kentucky*, 476 U.S. 683, 690 (1986). That A.S. sent explicit videos and photos to other men is not "central" to Boltz's defense. What the government needed to prove was that Boltz persuaded, induced, or enticed A.S. to produce sexually explicit material. 18 U.S.C. § 2251(a). Overwhelming evidence was admitted that Boltz asked A.S. for nude photos and videos, including at times when she did not want to. That evidence is not negated or impeached because she sent explicit material to other men. Evidence that does not help exculpate the defendant cannot be "central" to his defense.

The Sixth Circuit made this point in *Ogden*, 685 F.3d at 605. There, the defendant sought to introduce sexually explicit messages the victim had sent to other men under the same exception in Rule 412(b)(1)(C). *Id.* at 604. But "the chat logs were not critical to Ogden's defense" because all "the government needed to prove for the enticement charge was that Ogden induced the victim to engage in conduct to produce at least one explicit image." *Id.* at 605. "Chat-log evidence that the victim sent images to other men would not impeach the victim's testimony as to this specific incident." *Id.*

Our court has also held that irrelevant evidence cannot be central to a theory of defense. In *Young*, a defendant was not allowed to introduce evidence of his minor victims' sexual histories because the district court decided it had "no bearing whatsoever" on the elements of the crimes he was charged with. 955 F.3d at 614–15. In *Cephus*, the defendant pimp was not allowed to probe the history of his call girl's prostitution. That "she'd been a prostitute before does not suggest that [the pimp] didn't beat and threaten her." *United States v. Cephus*, 684 F.3d 703, 708 (7th Cir. 2012). Such "irrelevant" prior history cannot be smuggled in under Rule 412's exception. *Id.*

And in *Carson*, the district court rejected an attempt to examine a victim's prior history of prostitution. This court affirmed because "whether they had previously worked as prostitutes was irrelevant to the required *mens rea*." 870 F.3d at 593. Precluding Boltz from cross-examining A.S. about her irrelevant sexual history with other men is of a piece with this caselaw.

Boltz looks to *United States v. Zephier* for support. 989 F.3d 629 (8th Cir. 2021). There, the defendant was convicted of aggravated sexual abuse. *Id.* at 632. His theory of defense was that the victim consented. *Id.* at 634. The government offered an expert who explained how the victim's behavior after the assault was consistent with those who had experienced sexual assault. *Id.* The defendant sought to counter that expert testimony by showing that the victim had been previously sexually assaulted, and it was that assault that caused her behavior. *Id.* at 636. But the district court excluded evidence of the prior assault under Rule 412. *Id.* The Eighth Circuit reversed, holding that the exclusion violated the defendant's right to present a complete defense. "By keeping the defendant from exploring even the basic factual details of A.Z.'s prior sexual assault, the jury could have been led to the conclusion that her difficulties were caused by defendant's alleged criminal conduct, and his alone." *Id.* at 637 (citation modified).

*Zephier* is distinguishable. The defendant's "position throughout trial was that he had consensual sex with A.Z." *Id.* at 634. The exclusion of any mention of the prior sexual assault meant the defendant was left with no proof to buttress his theory of defense. But here, the evidence Boltz sought to admit would not exculpate him. As explained, the photos and videos do not disprove that Boltz asked A.S. for nude photo-

graphs. And *Zephier* is further distinguishable because implicit in that court's reasoning is a concern that the defendant was not allowed to rebut expert testimony, which holds a certain sway over the jury. *Id.* at 636 ("Total exclusion became problematic, however, once [the expert's] testimony was added to the mix. There is little question that it bolstered A.Z.'s credibility."). That is not an issue here.

In short, Rule 412(a) bars the evidence Boltz sought to admit. He wanted to show that A.S. sent sexually explicit photos and videos to other men without inducement, so she must have done so here too—precisely the inferential reasoning Rule 412 is meant to preclude. The district court did not abuse its discretion in excluding this evidence.

## B. Rule 404(b)–Character Evidence; Other Crimes, Wrongs or Acts

English courts in the 1600s, particularly the notorious Star Chamber, admitted evidence of a defendant's unindicted crimes for the purpose of demonstrating that the defendant had a bad character. *United States v. Queen*, 132 F.3d 991, 996 (4th Cir. 1997); *United States v. Harvel*, 115 F.4th 714, 733 (6th Cir. 2024). Enlightened jurists recognized the abuses this caused and called for reform. Jeremy Bentham published his *Rationale of Judicial Evidence* in 1827, advocating for a rule that "[e]vidence of bad character incriminating the defendant, ought not be admitted, unless and insofar as it results in evidence admissible on other grounds." Thomas J. Reed, *Trial by Propensity: Admission of Other Criminal Acts Evidenced in Federal Criminal Trials*, 50 U. Cin. L. Rev. 713, 720 (1981) (quoting Bentham, *Rationale of Judicial Evidence* (1827)).

These events proved influential on the early development of American law. *Id.* at 720–21; *Queen*, 132 F.3d at 996. The first American courts often excluded evidence offered for the purpose of showing the defendant had a bad character. In *Rex v. Doaks*, a defendant was accused of running a brothel, and the court refused to introduce evidence of his earlier "lascivious" acts. Reed, *supra*, at 721 (citing *Rex v. Doaks*, Quincy's Mass. Reports 90, 91 (Mass. Super. Ct. 1763)). And when a defendant was on trial for stealing valuables, the Virginia Supreme Court held that the trial court had erred in introducing evidence that the defendant had also stolen a cloak from a witness. *Id.* at 722; *Walker v. Commonwealth*, 28 Va. (1 Leigh) 574, 574 (1829). "Evidence was introduced for the purpose of proving, that the prisoner had carried away a *cloak* from the witness, on a charge of stealing a *watch* from another person" for the purpose that "if the cloak was taken *animo furandi*, the watch was taken with the same intent." *Walker*, 28 Va. at 579–80. Such evidence was improper because the defendant "cannot be prepared to defend himself against other charges, not exhibited against him, or to maintain the integrity of his whole life, when that is not put in issue." *Id.* at 576.

American courts continued to adhere to this rule. *See Michelson v. United States*, 335 U.S. 469, 475 (1948). The law does not treat the accused as either morally good or bad. *Greer v. United States*, 245 U.S. 559, 560 (1918). As Justice Holmes explained, "[i]t is not established as matter of law that all persons indicted are men of good character"; an accused's character was only an issue if he "chooses to make it one." *Id.*

The American common law prohibition on character evidence remains in force today. Federal Rule of Evidence 404(b)(1) states that any prior "crime, wrong or act" is inad-

missible if used "to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character." This is the "forbidden propensity inference." *United States v. Jones*, 455 F.3d 800, 812 (7th Cir. 2006) (Easterbrook, J., concurring). Against a defendant accused of theft, prosecutors may not introduce past convictions of shoplifting to put in the jury's mind, once a thief, always a thief. "In a very real sense a defendant starts his life afresh when he stands before a jury." *People v. Zackowitz*, 254 N.Y. 192, 197 (N.Y. 1930) (Cardozo, J.).

But evidence of past bad acts can be offered if used for a purpose the Rule expressly provides is permissible. Consider evidence offered to prove a defendant's identity. FED. R. EVID. 404(b)(2). A unique characteristic of the past act, which is also an aspect of the charged act, ties the defendant to the committed crime. For example, in *United States v. Beasley*, 809 F.2d 1273 (7th Cir. 1987), it was "ten bank robberies by a gang disguised by red polka dot bandannas, the series of counterfeit bills made by an engraver who never gets the Great Seal quite right, and so on." *Id*. at 1277. Such a "pattern serves as the signature that enables the jury to determine that this offense, too, was committed by the defendant." *Id.*

This circuit has a two-step test for considering evidence under Rule 404(b). *United States v. Gomez*, 763 F.3d 845 (7th Cir. 2014) (en banc). First, the proponent must show the evidence is relevant for a reason that does not depend on the propensity-based line of reasoning. *Id.* at 860. Second, the probative value of the evidence cannot be "substantially outweighed by the risk of unfair prejudice." *Id.* (citing FED. R. EVID. 403). We review a district court's Rule 404(b) decision

for abuse of discretion. *United States v. Taylor*, 148 F.4th 896, 906 (7th Cir. 2025).

The focus here is on a videotaped interview between Boltz and the Norwalk, Ohio Police. In it, Boltz explained he met M.C. on Omegle and exchanged sexually explicit photos over Snapchat. Boltz's contacts with M.C. and A.S. occurred within six months of each other.

Boltz argues these video snippets are inadmissible character evidence under Rule 404. To him, the government admitted the videos to show that because Boltz groomed M.C., he has a propensity for grooming children, such as A.S.

But a question posed by Boltz's lawyer at trial opened the door to admitting the videos. The mother of Boltz's children identified Boltz's genitalia in a picture sent to A.S. Yet on cross-examination by Boltz's counsel, she admitted the genitals depicted could have been those of Boltz's brother or father. And Boltz's counsel elicited a concession from Ryan Gillmor, a former police officer who downloaded data from Boltz's phone. Gillmor acknowledged that he could not be sure who was using the phone. In other words, Boltz offered an identity defense: it was not him on the phone sending the photos. So, the government needed to address any doubt this defense may have raised in the jurors' minds.

That provides the permissible purpose for the interview clips. Per the district court, Boltz used a "strikingly similar course of grooming conduct" with M.C. and A.S. In the interviews, Boltz admitted using Omegle to meet M.C., and then moving the conversation to Snapchat, which automatically deletes photos and is a helpful tool for receiving child pornography. Over Snapchat, he would send and receive sexually ex-

plicit photographs. And in those messages, the district court observed, Boltz "used similar manipulations and catch phrases." This distinctive method of drawing in victims shows it was Boltz and not others messaging A.S. *Cf. United States v. Brewer*, 915 F.3d 408, 415–16 (7th Cir. 2019) ("distinctive … method of operation" is permissible non-propensity purpose). The district court correctly concluded this evidence was probative of Boltz's identity.

This court reached a similar conclusion in *United States v. Norweathers*, 895 F.3d 485 (7th Cir. 2018). There, a defendant was prosecuted for sending child pornography over email. *Id.* at 487–88. He raised the same identity defense as Boltz— he was not the one behind the computer sending the contraband. *Id.* at 491. To counter, the government moved to admit a different email conversation originating from the defendant's email account, in which he discussed his desire to have sexual relations with children. *Id.* at 488, 491. This court held that those emails could be admitted for the purpose of showing the defendant sent the images in that case. "Norweathers used the tame181@yahoo.com account to discuss his sexual proclivity for young children, [which] if proven, would tend to make it more likely that Norweathers, and not someone else, used that account to send emails containing images of child pornography." *Id.*

*Norweathers* is analogous. Like the defendant there, Boltz raised an identity defense. And like Norweathers's email activity, a distinct pattern linked Boltz to the two crimes—the specific sequence he employed of means and methods to meet minors, groom them, and then exchange messages with them. That evidence fits within Rule 404(b)'s identity exception. *Cf. United States v. Zahursky*, 580 F.3d 515, 524 (7th Cir. 2009) (ev-

idence of other chats with minors established "it was more likely than not Zahursky himself who engaged in [charged] chats"); *United States v. Brewer*, 915 F.3d 408, 415 (7th Cir. 2019) (idiosyncratic facts in two robberies tied them together: defendant "lingered around banks," was "clothed head to toe," and "used a stick and a give-me-the-cash note"); *United States v. Chambers*, 642 F.3d 588, 595 (7th Cir. 2011) ("Prior instances of sexual misconduct with a child victim" may be admitted for a non-propensity reason).

To be sure, the link between the two acts cannot be so general that the actor could be anyone. After all, "[t]he permitted inference is *not* that 'this is the defendant's kind of crime' … rather, the idea is 'this could not be *anyone else's* crime." GEORGE FISHER, EVIDENCE 171 (3d ed. 2013). The commonality must be "distinctive." *Brewer*, 915 F.3d at 416. That a robber wore a hooded sweatshirt, a ski mask, and used a gun in two different bank robberies is not idiosyncratic enough. *See United States v. Price*, 516 F.3d 597, 603 (7th Cir. 2008). But here, the commonalities between Boltz's enticement of and interactions with M.C. and A.S.—how he met both on Omegle; the sequence of texting, phone and video calls; the movement to Snapchat, where pictures would not be preserved; the similar catchphrases and manipulation tactics; and the exchange of illicit photographs—are distinctive enough to support the district court's decision to admit the interview clips into evidence.

Under *Gomez*'s second step, 763 F.3d at 860, the district court may exclude relevant evidence when its "probative value is substantially outweighed by a danger of … unfair prejudice, confusing the issues, or misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evi-

dence." FED. R. EVID. 403. It is the "rare" case that warrants reversal under Rule 403. *United States v. Johnson*, 89 F.4th 997, 999 (7th Cir. 2024).

The video snippets of Boltz admitting to grooming a child and receiving explicit photos are indeed inflammatory. But under Rule 403, a court does not exclude *highly* prejudicial evidence, only *unfairly* prejudicial evidence. *Chambers*, 642 F.3d at 595. The government offered the videos to rebut Boltz's identity defense. Evidence that counters a defense is highly probative and admissible. *Norweathers*, 895 F.3d at 491 (affirming admission of inflammatory evidence because it was "highly probative of the issues, that, at the time, appeared to be central to [defendant's] anticipated defense"); *United States v. Wantuch*, 525 F.3d 505, 518 (7th Cir. 2008) (same).

The government also sanitized the videos to remove extraneous prejudicial statements. As the district court observed, the videos were "less than one minute each, did not contain any inflammatory remarks, did not show photographs with [M.C.], and did not detail any other activity, sexual or otherwise." In addition to purging the clips of unduly prejudicial statements, the district court instructed the jury that the defendant could not be charged with those other acts and explained the limited purpose for which it could consider the evidence. We presume juries follow their instructions. *Zahursky*, 580 F.3d at 525–26.

The district court did not abuse its discretion in admitting the interview clips. They served a relevant, permissible purpose as probative of Boltz's identity as the one messaging A.S.—and were not unduly prejudicial.

### C. Remaining Issues

A.S.'s mother testified about A.S.'s demeanor and personality. She explained that A.S. is socially awkward, has few friends, and had a manic breakdown when confronted by her mother about her relationship with Boltz. Her mother also narrated how she learned about A.S. and Boltz's relationship when she found the photos and videos, and that she told Boltz to stop contacting A.S.

Boltz claims the government called A.S.'s mother to testify to "garner sympathy for the victim" and that her testimony should not have been admitted. Whether Boltz objects that the mother's testimony was not relevant under Rule 401 or unduly prejudicial under Rule 403, the evidence was properly admitted under both.

The testimony was highly probative. Recall that Boltz was charged with 18 U.S.C. § 2251(a), which has as an element that the defendant "persuaded, induced, or enticed" a victim. Her mother testified that A.S. was particularly susceptible to being "induced or enticed" as she was isolated from her peers, maintained a constant online presence, and engaged in attention-seeking, erratic behavior. "Evidence probative of an issue relevant to an element of the offense must be admitted in all but the most extreme cases." *United States v. Kapp*, 419 F.3d 666, 677 (7th Cir. 2005) (citation modified). Her mother's testimony revealed to the jury that A.S. was a vulnerable victim for Boltz.

Finally, Boltz submits the government failed to preserve some of A.S.'s Snapchat records. For that, he requested a new trial, which the district court denied. Our review is for abuse

of discretion. *United States v. Sabaini*, 161 F.4th 1036, 1043 (7th Cir. 2025).

A government's failure to preserve evidence that might exonerate a defendant may violate due process. *Arizona v. Youngblood*, 488 U.S. 51, 57–58 (1988). To establish a *Youngblood* violation, the defendant must show "the government acted in bad faith, that the exculpatory nature of the evidence was apparent, and that the evidence could not be obtained elsewhere." *Tabb v. Christianson*, 855 F.3d 757, 768 (7th Cir. 2017).

As the government began to investigate Boltz, it acted to preserve the content on A.S.'s phone. When A.S.'s mother brought A.S.'s phone to the police, a detective took photographs of the sexually explicit photos. Another detective took the phone for forensic examination to extract text messages and Snapchat data.

At trial, A.S. testified her mother made her delete Snapchat, which she believed erased "some of the messages." Special Agent Landau explained A.S. deleted the account "before law enforcement was involved." A.S. also stated that Boltz had asked her to delete messages.

The district court correctly concluded that the government's actions here do not show bad faith. The court gave a detailed account of the government's efforts to preserve communications. The officers' prompt actions reveal an intentional effort to save evidence. Indeed, at trial, Boltz conceded he could not show bad faith: "we're aware one of [*Youngblood*'s] requirements is the showing of bad faith on the government. We didn't at the time, nor do we make now, any

argument that there's any showing of bad faith on the government."

Boltz protests that the deleted Snapchat messages meant the jury saw a one-sided, "skewed" presentation of the case. But unfairness is not a basis to exclude evidence under *Youngblood*. Boltz provides no reason why the district court abused its discretion in ruling on evidence preservation.

\*          \*          \*

The district court's evidentiary rulings were within its discretion and legally sound. Seeing no error, we AFFIRM.